DA 09-0235

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 253

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KURT J. NORMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 07-183
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Johnna K. Baffa, Attorney at Law, Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Barbara C. Harris, Assistant
Attorney General, Helena, Montana

Submitted on Briefs:  July 21, 2010

Decided:  December 2, 2010

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kurt J. Norman was convicted following a jury trial in the Twenty-First Judicial District Court, Ravalli County, of unlawfully possessing game animals. He now appeals, arguing (1) that the District Court improperly instructed the jury and (2) that his trial attorney rendered ineffective assistance of counsel. We affirm.

## BACKGROUND

¶2 In 2006, the Montana Department of Fish, Wildlife, and Parks (FWP) commenced an investigation of Norman based on information that he had been involved in unlawful hunting activities in Hunting District 270 (HD 270). This district, located southeast of Hamilton, is highly regulated for the purpose of fostering a population of mature buck mule deer. According to testimony from J.D. Douglas, a criminal investigator with FWP, the restrictions on hunting in HD 270 have, in fact, resulted in some "enormous" bucks. Correspondingly, the area has become very popular among hunters. In 2007, only 100 permits were issued for the large bucks, 15 of which went to area landowners. For the remaining 85 permits, FWP received 5,820 applications.

¶3 In 1999, Walter Mick Iten bought 3,500 acres within HD 270. He testified that after acquiring the property, he received calls from "literally hundreds" of people wanting to hunt there. He further testified about instances of trespassing and poaching, sometimes by persons whom he had specifically told *not* to enter his property. Thus, in late 2000, Iten enlisted Norman to patrol the property and report any trespassers or poachers. In exchange, Iten allowed Norman to shoot one legal elk and one legal deer per year. This arrangement continued until 2005. Notably, however, Norman was never issued a license

2

by FWP during this period to hunt buck mule deer in HD 270. Also, Iten did not give Norman permission to bring other people onto the property.

¶4   Douglas testified that in the course of the FWP investigation, he interviewed ten or so witnesses and seized animal parts, numerous photographs, and a computer from Norman's residence. Based on an analysis of this evidence and the witness interviews, he ascertained the location and circumstances under which each animal had been killed, who had done so, and whether the person had been issued a license for the particular animal in the particular location. According to testimony at trial, Norman was involved with a number of animals unlawfully taken in 2003, 2004, and 2007, sometimes as the shooter and sometimes as the person who accompanied the shooter.

¶5   The State filed a three-count Information on January 2, 2008, charging Norman with violations of § 87-3-111, MCA (2005), and § 87-3-118, MCA (2003),[1] as follows:

> Count 1: Unlawful possession of game animals, a felony, in violation of § 87-3-111(1), MCA (2005). Between May 8 and 22, 2007, Norman purposely or knowingly possessed two buck mule deer, one antelope,

---

[1] The prosecutor did not specify the subsections which Norman was charged with violating. She merely cited "§ 87-3-111, MCA (2005)" and "§ 87-3-118, MCA (2003)," even though these statutes identify different offenses within their subsections. Notably, this sort of imprecise charging recently resulted in the reversal of a conviction. In *State v. Spotted Eagle*, 2010 MT 222, ___ Mont. ___, ___ P.3d ___, the State argued that generally citing § 45-5-206, MCA, in the charging document was sufficient to charge the defendant with violating both subsection (1)(a) and subsection (1)(c) of the statute. We rejected this argument, however, because "[g]enerally citing [a criminal statute] does not allow the State to proceed on *any* theory under that Section while leaving the defendant guessing." *Spotted Eagle*, ¶ 12 (emphasis in original). It should also be noted that such practice is contrary to §§ 46-11-401(1) and -404(1), MCA. Here, we have deduced from the specific allegations under Counts 1, 2, and 3 of the Information that the prosecutor intended to charge violations of § 87-3-111(1), MCA (2005), and § 87-3-118(2), MCA (2003). But the point is that such specificity should be provided by the prosecutor in the first instance and not left to guesswork by the defendant or this Court.

and one bull elk which had been killed unlawfully (namely, without a valid license) and whose value exceeds $1,000.

Count 2: Possession of unlawfully taken wildlife, a felony, in violation of § 87-3-118(2), MCA (2003). Between November 1 and 30, 2004, Norman purposely or knowingly possessed one cow elk and two buck mule deer which had been killed unlawfully (without a valid license) and whose value exceeds $1,000.

Count 3: Possession of unlawfully taken wildlife, a felony, in violation of § 87-3-118(2), MCA (2003). Between October 12 and November 30, 2003, Norman purposely or knowingly possessed one antelope, one bull elk, and one buck mule deer which had been killed unlawfully (without a valid license, or in violation of the limit on number of game animals hunted or killed) and whose value exceeds $1,000.

¶6 The value of each animal is set by statute. *See* § 87-3-111(5), MCA (2005); § 87-3-118(2), MCA (2003); §§ 87-1-111, -115, MCA (2003 & 2005). Of relevance here, an elk, deer, or antelope that meets the criteria set forth in § 87-1-115, MCA, is deemed a "trophy animal" and, as such, is valued higher than it otherwise would be under § 87-1-111, MCA. For instance, an elk is valued at $1,000 under § 87-1-111, MCA, but a trophy elk (defined as having at least six points on one antler) is valued at $8,000 under § 87-1-115, MCA. Similarly, deer and antelope are valued at $500 or $300 (depending on certain characteristics) under § 87-1-111, MCA, but a trophy deer (i.e., with at least four points on one antler) is valued at $8,000 and a trophy antelope (i.e., with at least one horn greater than 14 inches in length) is valued at $2,000 under § 87-1-115, MCA.

¶7 Furthermore, with respect to Count 1 (unlawful possession of four animals whose value exceeds $1,000), § 87-3-111(5), MCA (2005), states that the value of game animals unlawfully possessed "as part of the same transaction . . . may be aggregated in determining the value." Similarly, with respect to Counts 2 and 3 (possession of three

unlawfully taken animals whose value exceeds $1,000), § 87-3-118(4), MCA (2003), states that the value of all wildlife possessed "within a 45-day period must be added together to determine whether the value of the wildlife is greater than $1,000."

¶8 Consequently, in order for Norman to be convicted of felony possession of game animals as charged in the Information under these statutes, it was necessary for the jury to determine, with respect to each count:

1. that he unlawfully possessed at least one of the animals listed in the count; and

2. that the value of the unlawfully possessed animal or animals exceeded $1,000 because (a) at least one animal was a trophy animal or (b) two or more animals were unlawfully possessed "as part of the same transaction" (Count 1) or "within a 45-day period" (Counts 2 and 3) and their value when "aggregated" (Count 1) or "added together" (Counts 2 and 3) exceeded $1,000.

¶9 Of course, in order to complete the second inquiry, the jury had to determine the value of each unlawfully possessed animal. Although the animals' values are set out in §§ 87-1-111 and -115, MCA, the applicable statute and ultimate value depends on whether the animal is a "trophy animal." Thus, upon finding that Norman had unlawfully possessed a particular animal, the jury had to decide whether that animal met the criteria of a "trophy animal." Once this determination was made for each unlawfully possessed animal, and the corresponding value was assigned to the animal pursuant to either § 87-1-111 or § 87-1-115, MCA, then the jury could calculate whether the value of the unlawfully possessed animal or animals in the given count exceeded $1,000—either because at least one was a trophy animal, or because two or more were unlawfully possessed "as part of the same transaction"/"within a 45-day period" and their value when "aggregated"/"added together" exceeded $1,000.

5

¶10     The case was tried on October 20 through 22, 2008.  Ultimately, the jury made the following findings reflected in the Verdict:

> Count 1:  Norman illegally possessed two buck mule deer, one antelope, and one bull elk between May 8 and 22, 2007, and "the total value of the animals illegally possessed" was "[o]ver $1,000."
>
> Count 2:  Norman illegally possessed one cow elk and one buck mule deer between November 1 and 30, 2004, but did not illegally possess the second buck mule deer alleged under this count, and "the total value of the animals illegally possessed" was "[o]ver $1,000."
>
> Count 3:  Norman illegally possessed one antelope and one bull elk between October 12 and November 30, 2003, but did not illegally possess the buck mule deer alleged under this count, and "the total value of the animals illegally possessed" was "[o]ver $1,000."

¶11     Under Count 1, the District Court gave Norman a five-year deferred imposition of sentence.  Under Counts 2 and 3, the court sentenced him to two five-year terms at the Department of Corrections, both suspended, to be served concurrently with each other and consecutively to the sentence under Count 1.  Furthermore, the court revoked, for the remainder of his lifetime, Norman's privileges to hunt, trap, and fish, and the court also ordered that he may not accompany any hunter, angler, or trapper in the field.

## DISCUSSION

¶12     *Issue 1.  Did the District Court improperly instruct the jury?*

¶13     We generally review jury instructions in a criminal case to determine if, when taken as a whole, they fully and fairly instruct the jury on the applicable law.  *State v. Allen*, 2010 MT 214, ¶ 22, 357 Mont. 495, ___ P.3d ___.  If the trial court has rendered instructions that are erroneous in some aspect, the mistake must prejudicially affect the defendant's substantial rights in order to constitute reversible error.  *State v.*

6

*Archambault*, 2007 MT 26, ¶ 14, 336 Mont. 6, 152 P.3d 698; § 46-20-701(1), (2), MCA. Norman raises three distinct challenges relating to the jury instructions in this case. We address them in turn.

## A. "Exceeds $1,000"

¶14 First, with regard to the statutory scheme under which he was charged in Count 1, Norman points out that if the value of the unlawfully possessed animal or animals does not exceed $1,000, then the offense is a misdemeanor. It is only when the value "exceeds $1,000" that the offense becomes a felony. *See* § 87-3-111(6), MCA (2005). Thus, in order for him to be given a felony sentence, there had to be a finding that the value of the animals that he unlawfully possessed exceeded $1,000. Moreover, as a matter of constitutional law, this fact had to be found by the jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 2537 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (emphasis in original)).

¶15 Here, Norman observes that the so-called "Elements Instruction" for Count 1 did not include "exceeds $1,000." Instruction No. 12 stated, in relevant part:

> To convict a Defendant of Unlawful Possession of Game Animal, the State must prove the following elements:
> 1. that the Defendant possessed all or part of any game animal;

7

2. that the game animal was unlawfully killed, captured, or taken, whether killed, captured, or taken in Montana or outside of Montana; and
3. that the Defendant acted purposely or knowingly.

Norman contends, therefore, that the jury was not instructed on "the essential element of value," including the underlying determination of each animal's "trophy" status, and thus the State was relieved of its burden of proving every element of the charge beyond a reasonable doubt and he was sentenced for the felony offense "without the jury specifically finding the essential element of value exceeding $1,000."

¶16 As the State points out, however, Norman did not object in the District Court to Instruction No. 12. It is perhaps our most fundamental rule of appellate review that, with rare exception, we will not consider an issue or claim that was not properly preserved for appeal. *State v. West*, 2008 MT 338, ¶¶ 16, 19-20, 346 Mont. 244, 194 P.3d 683. To properly preserve an issue or claim for appeal, it is necessary that the issue or claim be timely raised in the first instance in the trial court. *West*, ¶ 16; *see also State v. Ankeny*, 2010 MT 224, ¶¶ 35-39, ___ Mont. ___, ___ P.3d ___. Accordingly, since Norman's trial counsel did not object to Instruction No. 12, Norman seeks review of this issue in either of two ways: pursuant to our inherent power of plain error review, or within the context of an ineffective assistance of counsel claim.

¶17 As to the former, this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if a timely objection was not made in the trial court. *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled on other grounds*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. However, simply requesting that we exercise plain error review

is not sufficient. In order to obtain review of an unpreserved issue under this doctrine, the appealing party must (1) show that the claimed error implicates a fundamental right and (2) "firmly convince" this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *State v. Taylor*, 2010 MT 94, ¶¶ 14-17, 356 Mont. 167, 231 P.3d 79; *see also Finley*, 276 Mont. at 137, 915 P.2d at 215; *West*, ¶ 23 (the party must make a "threshold showing" that the claim meets any of the three *Finley* criteria).

¶18    Here, Norman has met the first requirement. His claimed jury instruction error implicates his fundamental right under the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted in *Apprendi*, to have all facts which the law makes essential to the imposition of his punishment found by a jury beyond a reasonable doubt. But he has not met the second requirement. It is true that under *Apprendi*, "exceeds $1,000" is a fact which the State had to prove and the jury had to find beyond a reasonable doubt before Norman could be punished for *felony* unlawful possession of game animals under § 87-3-111(1) and (6)(b), MCA (2005). However, the verdict form required the jury to determine the values of any animals unlawfully possessed under Count 1. Instruction Nos. 23, 24, and 27 through 31, in turn, stated the values and the methods for making this determination. And the verdict form contains an express finding that "the total value of the animals illegally possessed is" "[o]ver $1,000." Norman fails in his argument even to acknowledge this finding, let alone explain why, given the existence of an "[o]ver $1,000" finding, his rights under *Apprendi* were violated. As a

9

result, we are not "firmly convinced" that failing to review his challenge to the adequacy of the Count 1 Elements Instruction would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process.

¶19 As noted, Norman also raises this issue as the basis of an ineffective assistance of counsel claim. He asserts that by failing to object to the Count 1 Elements Instruction, his trial counsel's performance was deficient and, consequently, he was convicted and sentenced for a felony offense in violation of his rights under *Apprendi*. Under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution, a person has the right to the effective assistance of counsel in all criminal prosecutions. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 2063 (1984); *Deschon v. State*, 2008 MT 380, ¶ 18, 347 Mont. 30, 197 P.3d 476. A convicted defendant making a claim of ineffective assistance must show that counsel's representation was deficient—i.e., that it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064-65; *Whitlow v. State*, 2008 MT 140, ¶¶ 10, 20, 343 Mont. 90, 183 P.3d 861. In addition, the defendant must show that the deficient performance prejudiced the defense. *Whitlow*, ¶ 10. Both prongs must be satisfied in order to prevail on an ineffective assistance of counsel claim. Thus, if an insufficient showing is made regarding one prong, there is no need to address the other. *Whitlow*, ¶ 11.

¶20 Before we may reach the merits of an ineffective assistance of counsel claim on direct appeal, we must determine whether the allegations are properly before us. *State v.*

*Gunderson*, 2010 MT 166, ¶ 70, 357 Mont. 142, 237 P.3d 74. If the claim is based on facts of record, then it must be raised on direct appeal; but if the claim is based on matters outside the record, then we may dismiss it without prejudice and allow the defendant to raise the claim in a petition for postconviction relief. *See e.g. Gunderson*, ¶¶ 70-78.

¶21 Here, Norman's claim may be resolved on the record before us. Even assuming, for the sake of argument, that counsel should have objected to Instruction No. 12 because it did not identify "exceeds $1,000" as a specific "element" under Count 1, Norman has failed to show prejudice from this omission. As just discussed, the verdict form reflects that the jury made the requisite "exceeds $1,000" finding which authorized the District Court to sentence Norman for the felony offense. Thus, it cannot be said that the trial judge "inflict[ed] punishment that the jury's verdict alone [did] not allow." *Blakely*, 542 U.S. at 304, 124 S. Ct. at 2537. Having failed to show prejudice, Norman's ineffective assistance of counsel claim relating to Instruction No. 12 fails. *Whitlow*, ¶ 11.

### B. "Same Transaction"

¶22 Norman's next challenge to the jury instructions also relates to Count 1. Again, he was charged under this count with purposely or knowingly possessing two buck mule deer, one antelope, and one bull elk which had been unlawfully killed. The State alleged that he possessed these animals between May 8 and 22, 2007, and that their value exceeded $1,000. As noted above, the value of game animals that are unlawfully possessed "as part of the *same transaction* . . . may be aggregated in determining the value." Section 87-3-111(5), MCA (2005) (emphasis added). The jury was so instructed in Instruction No. 23. "Same transaction," in turn, means

conduct consisting of a series of acts or omissions that are motivated by: (a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or (b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

Section 46-1-202(23), MCA (2005) (paragraph breaks omitted). The jury was so instructed in Instruction No. 24.

¶23 Norman objected to these two instructions on the ground that the animals listed in Count 1 were not part of the "same transaction" because they had been killed on different dates and, thus, represented "separate offenses at different times." In this regard, he also opposed grouping the animals into three counts for the purpose of obtaining felony convictions and suggested that they instead should be listed as ten separate offenses. The prosecutor, however, explained that she had grouped the animals based on the dates of *possession*—the offense with which Norman had been charged. Moreover, with regard to the 2004 and 2003 offenses (Counts 2 and 3), she pointed out that, by statute, the value of all wildlife possessed within a 45-day period "must be added together" to determine whether its value is greater than $1,000. Section 87-3-118(4), MCA (2003). Likewise, with regard to the 2007 offense (Count 1), she observed that § 87-3-111(5), MCA (2005), permits the value of game animals unlawfully possessed "as part of the same transaction" to be aggregated. She argued that it was up to the jury to decide whether the animals listed in Count 1 had been unlawfully possessed "as part of the same transaction." The District Court agreed and, thus, overruled Norman's objection.

¶24 Norman first contends that because "same transaction" was not included as an "element" in the Count 1 Elements Instruction, the State was relieved of its burden of

proving beyond a reasonable doubt that all four animals listed in that count were part of the "same transaction," thus violating his rights under *Apprendi*. Yet, while he objected to Instruction Nos. 23 and 24 in the District Court, Norman did not raise *Apprendi* as the basis for that objection. It is well-established that, on appeal, a party may bolster his preserved issues with additional legal authority or make further arguments within the scope of the legal theory articulated to the trial court, but may not raise an entirely new legal theory. *See State v. Montgomery*, 2010 MT 193, ¶¶ 11-12, 357 Mont. 348, ___ P.3d ___. Accordingly, we will not consider Norman's arguments under *Apprendi*.

¶25    Alternatively, Norman reiterates his argument in the District Court to the effect that Instruction Nos. 23 and 24 did not adequately define "same transaction," but instead created confusion, in light of the way the animals were grouped. As before, he again suggests that the groupings were improper because none of the animals were "taken" as part of the same transaction. Notably, he argued this theory to the jury:

> Now, when you look at the verdict form that the prosecution just explained to you, they are grouping Counts 1, Counts 2 and Counts 3 into groups and they are calling them the same transaction because they are similar acts that have happened over time. In fact, you can apply your own common sense to what a transaction like that is. You can look at the definitions of it. But really what is the same transaction? I mean these are kills on different dates, different types of animals, different methods of killing, so the State wants you to believe these are all same type transactions, and the reason they want to do that is because that way the law says you can group the values of the animals together to aggregate to make them over a certain amount of money which of course affects other things. So use your common sense with that.

¶26    Norman's arguments in the District Court and on appeal, however, misstate what the jury had to decide. He was not charged with unlawfully killing or taking wildlife. He

13

was charged with purposely or knowingly possessing wildlife that had been unlawfully killed or taken. Thus, the question was not whether the animals had been *taken* as part of the "same transaction." It was whether the animals had been *possessed* as part of the "same transaction" during the specified time period. We agree with the State that this was a factual matter for the jury to decide, and we note that Instruction No. 24 provided a definition of "same transaction" that tracked § 46-1-202(23), MCA (2005). To be sure, it would have facilitated clarity if the "same transaction" question had been set out as a discrete finding under Count 1 on the verdict form. However, Norman never requested that such a finding be expressly delineated.

¶27    Norman also suggests that grouping the animals as part of the "same transaction" in order to obtain a felony conviction was improper. This contention is without merit. As noted, the prosecutor grouped the four animals under Count 1 based on the dates of alleged possession and because § 87-3-111(5), MCA (2005), allows the value of any game animals unlawfully possessed "as part of the same transaction" to be aggregated. Of course, by grouping the animals in this fashion, the prosecutor in effect alleged, and thus had to prove beyond a reasonable doubt: (1) that Norman unlawfully possessed at least one of the animals; and (2) that the value of the unlawfully possessed animal or animals exceeded $1,000 because (a) at least one animal was a trophy animal or (b) two or more of the animals were unlawfully possessed "as part of the same transaction" and their value when aggregated exceeded $1,000. But Norman has cited no authority and presented no argument establishing that the prosecutor was precluded from taking this approach.

14

¶28     We conclude that none of Norman's "same transaction" arguments establish error requiring reversal of his conviction.[2]

## C. Special Instruction A

¶29     Lastly, during their deliberations, the jurors submitted the following question, in writing, to the court:

> Do we need to find the individual guilty of <u>each</u> offense within a Count in order for the individual to be guilty of that Count?
>
> For example, if the individual is guilty of 2 of 3 offenses, is the individual guilty of the Count or must it be unanimous within a Count (i.e., 3 of 3 offenses)?

¶30     This question related to the fact that the verdict form was laid out as follows:

---

[2] It is necessary here to acknowledge one problematic aspect of the verdict form, which is referenced a number of times in this Opinion, so that our decision is not misinterpreted as implicitly endorsing that part of the form. Specifically, the verdict form directs the jurors to designate whether the "total" value of the animals illegally possessed under a given count was $1,000 or less, or over $1,000. The problem with the word "total" here is that it could lead a jury simply to sum up the value of the unlawfully possessed animals—regardless of whether those animals were possessed "as part of the same transaction" (under the 2005 MCA) or "within a 45-day period" (under the 2003 MCA). In other words, instructing jurors to determine the "total" value of the unlawfully possessed animals risks that they might not make the distinct preliminary determinations concerning "same transaction" and "45-day period" which are required before values may be aggregated or added together. A safer approach might be to have the jury make a specific "same transaction" or "45-day period" finding and then designate the total value of the animals so possessed. But, in any event, Norman has not specifically challenged the use of the word "total" on the verdict form in this case. Moreover, the jurors here were instructed regarding the "same transaction" and "45-day period" requirements, Norman argued his interpretation of "same transaction" during his closing argument, and we must presume that the jurors followed the valuation instructions (including the "same transaction" instruction) when making their findings concerning value. *See Malcolm v. Evenflo Co.*, 2009 MT 285, ¶ 103, 352 Mont. 325, 217 P.3d 514 ("We must trust that the jury will heed the court's instructions as to how to evaluate the evidence presented."); *State v. Sanchez*, 2008 MT 27, ¶ 57, 341 Mont. 240, 177 P.3d 444 ("American jurisprudence depends on a jury's ability to follow instructions and juries are presumed to follow the law that courts provide.").

15

**COUNT 2:** To the charge of Possession of Unlawfully Taken Wildlife, committed on or about and between November 1, 2004 and November 30, 2004:

_____
(Write on the above line "Guilty" or "Not Guilty")

        If the verdict is "Not Guilty," your duty is completed. You need go no further. Date and sign this Verdict.
        If the verdict is "Guilty," identify the animals illegally possessed by writing "Guilty" before the animals unlawfully possessed:
_____ 2004 Cow Elk;
_____ 2004 Goligoski Buck;
_____ 2004 Boden Buck.
If the verdict is guilty, the total value of the animals illegally possessed is:
     _____ $1,000 or less; OR
     _____ Over $1,000.
(Mark the applicable amount.)

Counts 1 and 3 were laid out in the same format.

¶31    As noted, the jurors indicated that they were uncertain about whether they had to find Norman guilty of each "offense" within a given count in order for him to be guilty of that count. Thus, upon receiving the jury's note, the parties convened in chambers and the prosecutor proposed that the jury be instructed: "If by 'offense' you mean acts related to a particular animal, the answer is that you need to find the Defendant guilty regarding only one animal to find him guilty of the count." In response, defense counsel observed: "That's true. I can't think of any -- that's plain and clear. I can't think of any other to say." The District Court then typed up the prosecutor's proposed language as Special Instruction A and sent it to the jury.

¶32    Norman opines that by allowing the jury to find him guilty of a given count based on his guilt of unlawfully possessing only one of the animals listed in that count, Special Instruction A "effectively permitted the jury to convict [him] of three felony Counts that

16

very possibly did not amount to felonies at all." He therefore asserts that this instruction "constituted a sentence enhancement based on facts not found beyond a reasonable doubt by the jury, directly in violation of the principles expounded in *Apprendi* and its progeny." As before, because trial counsel did not object to this instruction, but in fact expressly agreed with it, Norman again requests plain error review and, in the alternative, raises an ineffective assistance of counsel claim. *See* ¶ 16, *supra*. For the reasons which follow, however, we are not persuaded that there was an *Apprendi* violation.

¶33 Special Instruction A instructed the jurors that they needed to find Norman guilty regarding only one animal in a given count in order to find him guilty of that count. This was a correct statement with regard to Count 1. If a person possesses all or part of any game animal that was unlawfully killed, captured, or taken, then he is guilty of violating § 87-3-111(1), MCA (2005). The question of whether the offense amounts to a felony or a misdemeanor is distinct, requiring a separate finding with respect to the animal's value. *See* § 87-3-111(6), MCA (2005). But he is still guilty of the offense due to his unlawful possession of the animal.

¶34 With regard to Counts 2 and 3, however, Special Instruction A was incomplete because the offense is not committed unless the value of the wildlife is more than $1,000. *See* § 87-3-118(2), MCA (2003) ("A person commits the offense of possession of unlawfully taken wildlife having a value of more than $1,000 if the person purposely or knowingly has actual or constructive possession of or transports or causes to be transported unlawfully taken wildlife having a value of more than $1,000."). Thus, under Count 2, for example, if the jury had found Norman guilty of possessing only one of the

buck mule deer, and if this deer was not a trophy animal, then the value of the animal he possessed under Count 2 would have been either $500 or $300 (*see* § 87-1-111(1)(c), (d), MCA (2003)) and he would not have been guilty of "possession of unlawfully taken wildlife having a value of *more than* $1,000" (emphasis added). For this reason, counsel arguably should have objected to Special Instruction A.

¶35 Nevertheless, Norman's claim fails because the jury ultimately found him guilty with regard to multiple animals under each count. Specifically, he was found guilty of unlawfully possessing all four animals under Count 1 (two buck mule deer, one antelope, and one bull elk), and thus he was guilty of unlawful possession of a game animal as defined in § 87-3-111(1), MCA (2005). Furthermore, the jury determined that the value was over $1,000, thus making the offense a felony. *See* § 87-3-111(6)(b), MCA (2005). Likewise, he was found guilty of possessing two animals under Count 2 (one cow elk and one buck mule deer) within a 45-day period, and the value of these animals added together necessarily is more than $1,000 since the elk alone is valued at $1,000 as a nontrophy animal. *See* § 87-1-111(1)(b), MCA (2003). Thus, he was guilty of "possession of unlawfully taken wildlife having a value of more than $1,000," in violation of § 87-3-118(2), MCA (2003), which is a felony. This same reasoning applies to the antelope and bull elk possessed under Count 3.

¶36 Consequently, Norman has not demonstrated that his counsel's failure to object to Special Instruction A prejudiced his defense by virtue of an *Apprendi* violation. Under *Apprendi*, a judge may not impose a sentence that is greater than the sentence which the law authorizes under the facts admitted by the defendant or found by the jury beyond a

reasonable doubt. *See Cunningham v. California*, 549 U.S. 270, 281-84, 127 S. Ct. 856, 863-65 (2007). "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." *Blakely*, 542 U.S. at 304, 124 S. Ct. at 2537 (citation and internal quotation marks omitted). Here, Norman's felony sentences are authorized by the facts reflected in the jury's verdict—Special Instruction A notwithstanding.

¶37   *Issue 2.  Did Norman's trial attorney render ineffective assistance of counsel?*

¶38   The basis of Norman's ineffective assistance of counsel claim is that

> by failing to object to an incorrect Elements Instruction and agreeing to the Special Instruction, counsel effectively allowed the jury to convict Norman of a felony without the jury having to find him guilty of each offense under each Count.  Essentially, Norman's counsel agreed to Instructions that allowed the jury to increase the penalty against Norman without a corresponding finding of guilt by the jury for such an increase.

We have already addressed and rejected this claim within the context of the discussion under Issue 1.  *See* ¶ 21, ¶¶ 35-36, *supra*.

## CONCLUSION

¶39   As stated at the outset, we review jury instructions in a criminal case to determine if, when taken as a whole, they fully and fairly instruct the jury on the applicable law. Here, we conclude that, as a whole, the instructions and the verdict form fully and fairly instructed the jury on the applicable law.  But more to the point of Norman's arguments, we conclude that he has failed to establish he was given felony sentences, in violation of *Apprendi*, based on facts that were not found by the jury beyond a reasonable doubt.

19

¶40    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

Justice Brian Morris specially concurs.

¶41    I concur with the Court's decision to affirm Norman's conviction for the reasons stated in the Court's opinion. I write separately to raise concerns with the notion that the District Court need not instruct the jury regarding the value of the unlawfully taken game animals as an element of the offense, and that the State need not present evidence of the value of the unlawfully taken game animals in light of the fact that § 87-3-111(5), MCA, § 87-3-118(2), MCA, § 87-1-111, MCA, and § 87-1-115, MCA, set the values.

¶42    The Fifth and Fourteenth Amendments to the U.S. Constitution and Montana Constitution Article II, Section 17, proscribe any deprivation of liberty without due process of law. The Due Process Clause protects a defendant from conviction until the prosecution proves beyond a reasonable doubt every fact necessary to constitute the charged crime. *Apprendi v. New Jersey,* 530 U.S. 466, 477, 120 S. Ct. 2348, 2356 (2000) (citing *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)). "Any fact that

20

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *State v. Field*, 2005 MT 181, ¶ 28, 328 Mont. 26, 116 P.3d 813 (citing *Apprendi*, 530 U.S. at 490).

¶43 The jury convicted Norman of three separate felonies of unlawfully possessing game animals that had a value in excess of $1,000. Whether the unlawfully possessed animals' value exceeded $1,000 constituted an essential element of Norman's felony offense. Section 87-3-111(6)(b), MCA. The value of each animal served as an essential fact that increased the penalty of Norman's crime from a misdemeanor to a felony. The State bore the burden to prove each animal's value beyond a reasonable doubt. This fundamental concept of American law applies to all criminal cases. *See Apprendi*, 530 U.S. at 477-90, 120 S. Ct. at 2356-63. The language of *Apprendi* makes no exception for fish and game violations.

¶44 The State concluded in its closing argument, "[W]e'll give you the value of each animal. You heard the Court read them. That's all set by statute." The State cited no authority in its brief, however, to support the proposition that a legislature may make a statutory finding that removes the jury's duty to assess all the facts that would increase a criminal defendant's conviction. *Apprendi*, 530 U.S. at 490. I am aware of no authority to support this approach and I would question its validity in a future case in which an appellant properly preserves the issue.

/S/ BRIAN MORRIS

21