DA 13-0483

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 29N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES R. CRESSLER,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Granite, Cause No. DC 12-02
Honorable Ray Dayton, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        James R. Cressler, self-represented; Drummond, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

        Chris Miller, Granite County Attorney; Phillipsburg, Montana


        Submitted on Briefs:  January 2, 2014
                      Decided:  February 4, 2014


Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant, James Cressler (Cressler) and his father, Robert Cressler (Robert), both have homes on a 20-acre parcel of land in Drummond. The property is marked with no trespassing signs and orange posts, although Felan Road passes through the Cressler property. From the testimony, rights associated with the road appear disputed but, at a minimum, it provides access to other area landowners. On December 27, 2011, Dale Cochrell (Cochrell), Scott Adler (Scott), and Jake Adler (Jake) were hunting mountain lions in the area, where public lands are interspersed with private holdings. They were hunting with three dogs—Bob, Shy, and Bodie. It is undisputed that, at some point during the day, the dog Bob (Bob), owned by Cochrell, crossed a portion of Cressler's property. Cressler and Robert had approximately 27 dogs of their own on their property. The events that followed are disputed, so the following is taken from the evidence introduced at trial.

¶3 Cressler asserted that around 8:45 a.m., several of his dogs began barking and running toward the house while being attacked and chased by two unknown dogs. Cressler reported that he had had problems with other dogs on his property in the past and

would summarily shoot unknown dogs on his property. Both Robert and Cressler fired what Robert described as "warning shots" to scare off the attacking dogs, but one of the shots fired by Cressler struck and killed Bob. Cressler stated that two of his dogs were injured in the attack, but he did not seek medical attention for them. He stated that he later found the two dogs dead from their injuries and buried them. Robert placed Bob in a garbage bag and dumped him in a gully about two miles down the road from Cressler's property. Cressler called the Sheriff's Office that morning to report the attack and shooting of the dog. Deputy Roland Hultman spoke with Cressler on the phone and met with Cressler and Robert at approximately two o'clock that afternoon.

¶4 Deputy Hultman was not shown any injured or dead dogs on Cressler's property, nor was he shown a location where a dog fight had occurred. Deputy Hultman asked Cressler to take the dogs to the vet for medical attention in order to document the injuries, however he was told that Cresslers would not seek medical attention for either dog because they did not want to invest money in any dog since they had so many.

¶5 Scott testified that while looking for the dog, he drove up Felan Road which goes through Cressler's property. Cressler approached Scott in the road. Scott asked if Cressler had seen any dogs, and Cressler replied that two "ran off that way." Cressler did not mention the dog fight, shooting, or disposal of Bob. Scott noticed dog tracks and blood on the ground near Cressler's gate. There only appeared to be one set of dog tracks, along with human tracks and drag marks.

3

¶6 Cochrell testified that he used the tracking collar to locate Bob. After finding Bob dead in the garbage bag, clearly killed by a gunshot, Cochrell called the Sheriff's Office. Cochrell testified that he would be surprised if any of his dogs would have gone off the lion track and tangled with other dogs given their breeding, instinct, and training. Deputies Hultman and Ed Short responded to the call and met Cochrell and Scott where Bob was found. The group traveled to where Scott had noticed blood and dog tracks earlier in the day.

¶7 Both Deputies testified that when viewing the location where Scott had found blood that day, they only saw what appeared to be one set of dog tracks. There were no signs of a dog fight in the area where Bob was killed. They also testified that their examination of Bob revealed a clear bullet hole to the abdomen and a possible gunshot in the head, but no sign of an altercation with other dogs such as bite marks or tears.

¶8 Cressler was issued citations for cruelty to animals, criminal mischief, and harassment, all misdemeanors, on January 22, 2012. Cressler entered a plea of not guilty to all charges on February 3, 2012, and he was appointed trial counsel. A jury trial was held on July 20, 2012, in Justice Court. Following his conviction on all three counts, Cressler appealed to the Third Judicial District Court, Granite County, on August 21, 2012. Daniel Miller and James Reavis were substituted as counsel for Cressler before the District Court. The District Court signed a Scheduling Order on September 20, 2012, setting the trial for March 11, 2013.

4

¶9 Miller subsequently filed a motion to continue the trial on March 4, 2013 "on the grounds and for the reasons that the defense ha[d] been made aware of new information regarding this matter and need[ed] additional time to fully investigate that information." The State did not object to the continuance, and the trial was reset for May 30, 2013. Cressler assets this continuance was filed without his knowledge. He subsequently requested leave to represent himself. The District Court granted Cressler's request, and appointed Miller and Reavis as stand-by counsel. Cressler was convicted by jury of cruelty to animals and criminal mischief, but acquitted of harassment. Cressler appeals. [1]

¶10 Cressler argues that the charges against him must be dismissed because his right to a speedy trial was violated by the continuation of his district court trial, without his consent, resulting in a trial being conducted 252 days after the District Court entered the scheduling order. He further argues there was insufficient evidence to convict him of the cruelty to animals and criminal mischief charges because the State failed to prove that Cochrell and Adlers were on a "lawful" hunt at the time of the shooting, and it failed to disprove Cressler's justification defense. Finally, Cressler argues that his appointed counsel were ineffective by filing the motion to continue the second trial without his consent, failing to call in expert witnesses and subpoena documents as he had requested, failing to provide discovery in a timely manner, and failing to participate on his behalf at trial.

---

[1] Cressler's opening brief is titled "Appeal of Defendant for Post Conviction Relief." However, there has been no postconviction proceeding and Cressler's Notice of Appeal was filed on July 22, 2013, within the 60-day deadline for a direct appeal from the District Court's final sentencing order of June 21, 2013. We thus deem this to be a direct criminal appeal.

¶11     Section 46-13-401(2), MCA, requires that a court dismiss the prosecution of a misdemeanor charge if the defendant has not been brought to trial within six months of the entry of a plea unless the trial was postponed upon the defendant's motion. However, this statute has long been held to apply only to the original trial in justice court, and not to a trial de novo in district court. *State v. Stanko*, 1998 MT 323, ¶ 25, 292 Mont. 214, 974 P.2d 1139 (citations omitted). Cressler was tried in justice court within six months of his plea, thus his right to a speedy trial under the statute was not violated by the postponement of his district court trial.

¶12     The State was not required to prove that the victim was engaged in a lawful hunt to support a conviction of cruelty to animals under § 45-8-211, MCA, or criminal mischief under § 45-6-101, MCA. Though the harassment charge Cressler was acquitted of required the State to prove that Cressler interfered with another person's "lawful taking of a wild animal" pursuant to § 87-6-215, MCA, no similar requirement existed for the other charges. Further, conflicting testimony does not render the evidence insufficient to support a guilty verdict, and determinations of credibility and weight of testimony are within the exclusive province of the jury. *State v. Wood*, 2008 MT 298, ¶ 43, 345 Mont. 487, 191 P.3d 463. The jury was presented with sufficient evidence from which to conclude that Cressler was guilty of these offenses and to reject his argument that he was justified in shooting the dog under the circumstances.

¶13     Ineffective assistance of counsel (IAC) claims are evaluated under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052

6

(1984). *State v. Morsette*, 2013 MT 270, ¶ 18, 372 Mont. 38, 309 P.3d 978. The test requires that a defendant asserting IAC establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors the result of the trial would have been different. *Morsette*, ¶ 19. However, before reaching the merits of an IAC claim on appeal, this Court must first determine whether the claim is properly before it. *State v. Savage*, 2011 MT 23, ¶ 23, 359 Mont. 207, 248 P.3d 308. If the record explains "why" counsel took, or failed to take, action in providing a defense, this Court may address the issue on direct appeal. *State v. Wright*, 2011 MT 92, ¶ 31, 360 Mont. 246, 253 P.3d 838. If the record does not reveal "why" counsel acted in a specific manner, then this Court will dismiss the IAC claim without prejudice and allow the defendant to raise the claim in a petition for postconviction relief. *State v. Norman*, 2010 MT 253, ¶ 20, 358 Mont. 252, 244 P.3d 737. Sometimes, however, it is unnecessary to ask "why" in the first instance such as when there can be "no plausible justification" for what defense counsel did. *State v. Kougl*, 2004 MT 243, ¶¶ 15-16, 323 Mont. 6, 97 P.3d 1095. Similarly, it would be unnecessary to ask "why" when there can be no plausible argument that the action was prejudicial to the defendant.

¶14 Cressler raises seven allegations in his IAC claim, which we separate into four categories. First, Cressler claims his counsel's filing of a motion for continuance in the District Court without his consent pushed the trial beyond the six-month statutory requirement. He argues this continuance deprived him of the right to a speedy trial, and

his counsel's failure to move for dismissal of the charges was ineffective. The second claim centers on his counsel's failure to obtain expert witnesses and to subpoena hunting and dog licenses for Cochrell and Adlers, despite his repeated requests to do so. Third, Cressler asserts despite his inexperience with the law, including the voir dire process and the rules of civil procedure, his stand-by counsel "failed to offer any assistance" throughout the trial's duration. Finally, Cressler claims that his counsel failed to forward discovery materials to him in a timely manner after being removed from the case. He alleges this delay in providing discovery prohibited him from adequately preparing for his trial.

¶15 We can properly review Cressler's allegations of IAC regarding the motion for continuance on direct appeal because the record plainly reveals "why" counsel took this action. In the motion, counsel stated it was made because "the defense has been made aware of new information regarding this matter and needs additional time to fully investigate the information." We have already noted that the six-month statute did not apply to district court proceedings. Further, nothing about counsel's request for a continuance less than two weeks before trial in response to new information that may have come to light is objectively unreasonable. Additionally, Cressler has not presented any evidence that the outcome of his case would have been different but for the continuance.

¶16 We can evaluate Cressler's second and third IAC claims on direct appeal because it is unnecessary to ascertain the reason for his counsel's actions. With regard to his

8

claim regarding expert witnesses and subpoenaed records, it is clear that no prejudice can be alleged from these actions. Cressler requested to bring a witness from Fish, Wildlife, and Parks (FWP) to testify about regulations for hunting mountain lions in the area, as well as whether Cochrell and Adlers were on a "lawful" hunt. Cressler further requested to have an expert testify about proper training and handling of hunting dogs to establish both that Cochrell failed to properly control his dog and to discredit Cochrell's claim that Bob was worth $1,500. Finally, Cressler requested that hunting licenses for Cochrell and Adlers be subpoenaed to verify whether they had the proper licenses for their lion hunt.

¶17 As explained above, it was unnecessary for the State to prove that Cochrell was on a lawful hunt at the time of the shooting to support the convictions for cruelty to animals and criminal mischief. Similarly, it was unnecessary for defense counsel to gather evidence to prove that there was an "unlawful" hunt. Though this evidence may have been pertinent to the hunter harassment charge, Cressler was acquitted of this crime and thus cannot claim any prejudice by counsel's failure to call FWP personnel or to subpoena hunting licenses.

¶18 Cressler also claims that Cochrell was required by law to "prevent the hunting dogs from running at large," and if he had properly controlled Bob, the dog would never have been killed. This argument is based on §§ 87-3-124(1)(d) and 87-1-102(1), MCA (both provisions were repealed effective October 1, 2011). Section 87-3-124(1)(d), MCA, provided that an owner of a dog who chases, stalks, pursues, attacks, or kills a hooved game animal is guilty of a misdemeanor even if "the dog is not under the control

9

of an adult." Section 87-1-102(1), MCA, simply provided that any person who violates a fish and game law is guilty of a misdemeanor. Neither of these statutes provides any support for Cressler's claim that Cochrell was required to have physical control over Bob throughout the entire hunt. It appears Cressler may be arguing that under § 87-3-124(1)(c), MCA, he was entitled to kill the dog "without criminal or civil liability." However, these statutes were not effective at the time Bob was killed, and even if they were, Cressler is not a peace officer, game warden, or other person authorized to enforce the fish and game laws. Further, the statute specifically excepted dogs engaged in a lion hunt during lion season. Section 87-3-124(3)(a), MCA. Finally, Cressler has never alleged that Bob was attacking a hooved game animal. Thus, there can be no argument that failure to have experts testify regarding Cochrell's failure to comply with a repealed statute prejudiced his defense. As Cressler has provided no other reason why Cochrell's handling of Bob at the time of his death justified the shooting, this claim likewise fails to meet either prong of the *Strickland* test.

¶19 In addition to the proper handling concern, Cressler sought to introduce expert testimony as to the monetary value of a trained hunting dog, such as Bob, to discredit Cochrell's claim that the dog's value was $1,500. However, monetary value of the animal was not an element for either the cruelty to animals or criminal mischief charges. Though the State would have had to prove a monetary value of over $1,500 to support a felony conviction for criminal mischief, § 45-6-101(3), MCA, Cressler was charged with a misdemeanor, which requires no such proof. Thus, the introduction of such expert

10

testimony would have been irrelevant to his convictions, and failure to obtain the testimony was not ineffective.

¶20 Cressler's claim that his stand-by counsel failed to provide assistance at trial likewise does not establish ineffectiveness. Cressler does not allege that the District Court erred in allowing him to represent himself at his request, but rather alleges that his stand-by counsel did not assist him during trial. The transcript reveals that, during the trial, Cressler requested and was granted leave by the court to consult stand-by counsel, at which times a conversation between Cressler and counsel would be conducted. Stand-by counsel is not held to the same standards as an attorney fully representing a client. Cressler requested to represent himself and was warned of the difficulties and obstacles in doing so. Cressler was given the opportunity to consult with counsel during the trial as he wished, during which time it appears counsel responded to his inquiries. Cressler does not assert that stand-by counsel refused to aid him when he requested it. Cressler's claim does not establish, and we cannot conclude, that stand-by counsel violated any objective standard of reasonableness during the trial.

¶21 Cressler's final IAC claim cannot be reviewed on direct appeal because it is not apparent from the record what discovery materials counsel allegedly failed to provide. Cressler does not explain what material was not timely provided, nor what effect such delay had upon his defense. As the nature of this claim cannot be determined from the record, Cressler may raise this issue in a petition for postconviction relief with the District Court. He will need to make out a plausible claim in order to do so.

¶22    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  The jury's verdict was supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.  Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT